UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                                    Chapter 11

Comfort Auto Group NY LLC,                                 Case No.

                                              Debtor.
------------------------------------------------------------x

## DECLARATION PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

Tim Ziss declares the following under penalties of perjury pursuant to 28 U.S.C. §1746:

I am the current Chief Restructuring Officer of Comfort Auto Group NY LLC (the "Debtor"), having acquired management and membership rights in the Debtor from Heshy Gottdiener earlier this year.  The transition to new management was done to facilitate a restructuring of the Debtor's car dealership business.  Based upon my prior agreement with Mr. Gottdiener in April 2020, I am authorized to file this Chapter 11 case on behalf of the Debtor, and submit this Declaration in support thereof.

### Events Leading up to the Chapter 11 Filing

1.     Before the onset of the Covid-19 pandemic, the Debtor owned and operated an automobile dealership and showroom at 8825 5th Ave, Brooklyn, NY 11209-5901 (the "Showroom Premises"), known as Chrysler Dodge Jeep Ram Fiat of Bay Ridge.  The Debtor leases the Showroom Premises from 34 Linden Realty Co., LLC, as landlord, and also maintains a Service Center at 8635 18th Street, Brooklyn, and a warehouse/yard at 4300 Arthur Kill Road, Staten Island (the "Staten Island Yard").

2.     The dealership is currently closed due to the pandemic, and the goal of the Chapter 11 case is to resume full-scale service and sale operations while the Company's overall finances are restructured.

3. With New York starting to emerge from the Covid-19 restrictions, this is the opportune time for a re-opening of the dealership, and the Chapter 11 is being filed to facilitate a smooth transition, even though in recent weeks more than 200 cars were seized by the Debtor's secured creditor, as set forth below.

4. Like most car dealerships, the Debtor's business is financed by a secured wholesale vehicle or floor plan financing (the "Floor Plan Loans") with General Motors Corporation's lending arm, Ally Financial Inc. and Ally Bank (collectively, "Ally").

5. According to information provided to me, the Debtor's relationship with Ally began in September 2017, and Ally alleges that the Debtor is indebted for a principal amount of $17,151,442, plus certain accrued interest and other charges as of May 2020. The Floor Plan Loans are secured by the Debtor's operating assets, and subject to certain corporate and individual guaranties.

6. Problems with Ally arose in 2019, when Ally allegedly discovered purported discrepancies in reporting and liquidity regarding the Debtor and other affiliates. Ally took issue with Mr. Gottdiener's management, and litigation ultimately ensued in the state and federal courts just before the start of the pandemic.

7. In fact, Ally commenced an action in the United States District Court for the Eastern District of New York on March 9, 2020 (20-cv-01281) to enforce the alleged loan defaults.

8. In that action, the Debtor and others asserted various defenses relating to breach of the convenient of good faith and fair dealing, and counterclaims for tortious interference with the Debtor's contracts with its customers.

9. In the meanwhile, Heshy Gottdiener entered into an agreement with the undersigned providing for the sale of his 100% membership interest in the Debtor following a 180-day due diligence period. It is contemplated that the Debtor will restructure its business during the due diligence period, and I received authorization to commence a Chapter 11 case as part of that restructuring effort pursuant to resolution attached hereto as Exhibit "A". Additionally, a meeting was recently called on notice to Mr. Gottdiener and his attorney, who, I am advised, indicated to the Debtor's attorney that there is no objection to the Chapter 11 filing.

### Reorganization Strategy

10. Within the last few weeks, Ally exercised self-help, and reclaimed more than 200 vehicles by entering the Staten Island Yard without an order of seizure, notwithstanding the pending federal action. The Debtor, through proposed bankruptcy counsel, has since entered into negotiations with Ally and its counsel concerning the scope of its claims and disposition of the remaining vehicles. The Debtor hopes to negotiate a discounted payoff on the remaining vehicles and release of space parts. If an agreement cannot be reached, however, the Debtor reserves all of its rights, remedies and claims against Ally.

11. However, more optimistically, if an agreement can be reached with Ally, the Debtor hopes to finalize ongoing discussions with a number of potential lenders with DIP financing. Besides new floor plan financing, my investors and I are willing to lend the Debtor up to $1.0 million to immediately reopen the Service Center.

12. Completion of core DIP financing will provide the Debtor with the ability to re-open the dealership, resume service and maintenance operations, and re-start the sale of existing and new inventory.

13. To do so, the Debtor also intends to bring back approximately 55 employees from furlough to first perform repair operations, and then sales and marketing. A proposed new work flow schedule and 30-day budget is attached hereto as Exhibit "B".

14. The ultimate goal is to reestablish the dealership by year's end, based upon restructured loan, lease and labor agreements. I believe I am well-positioned to lead the reorganization effort since I am relatively new to the situation, have access to financing, and remain separate from Mr. Gottdiener.

### Local Rule 1007-2 Disclosures

15. Pursuant to Local Rule 1007-2)(a)(2) and (3), no committees were formed prior to the filing of the petition.

16. Pursuant to Local Rule 1007-2)(a)(5), the Debtor's main secured creditor is Ally, which alleges a principal debt of approximately $17 million.

17. Pursuant to Local Rule 1007-2(a)(6), a summary of the assets and liabilities of the Debtor will be set forth in the Schedules to be filed within the next fifteen (15) days.

18. Pursuant to Local Rule 1007-2)(a)(7), my affiliated company, Signature Lien Acquisitions III, LLC, has the right to close on the sale of Mr. Gottdiener's membership interests.

19. Pursuant to Local Rule 1007-2)(a)(8), certain of the Debtor's assets were repossessed by Ally as a secured lender.

20. Pursuant to Local Rule 1007-2)(a)(9), the Debtor owns no real property, and leases the Showroom Premises, as well as the service center and warehouse facilities.

21. Pursuant to Local Rule 1007-2)(a)(10), the Debtor's available books and records are maintained by me as CRO.

22. Pursuant to Local Rule 1007-2)(a)(11), a schedule of pending lawsuits is attached.

23. Pursuant to Local Rule 1007-2)(a)(12), I am not receiving compensation from the Debtor.

24. The Debtor hopes to resume operations based upon an anticipated weekly payroll of approximately $ 12,000. A budget covering the next thirty days will be filed shortly.

Dated:  Brooklyn, NY
       July 24, 2020

/s/ Tim Ziss

Dated: July 9, 2020

**By E-mail**

To:   Scott Levenson (levensonlawgroup@gmail.com)
      Heshy Gottdiener (8075973@gmail.com)
      Tim Ziss (TimZiss@alliedpropertiesllc.net)

### NOTICE OF SPECIAL MEETING OF COMFORT AUTO GROUP NY LLC

**WHEREAS**, Comfort Auto Group NY LLC (the "Company") owns and operates an automobile dealership at 8825 Fifth Avenue, Brooklyn, NY, known as Bay Ridge Chrysler Dodge Jeep Ram Fiat (the "Dealership"); and

**WHEREAS**, the Company requires restructuring due to number of factors, including the impact of the Covid-19 pandemic, which has suspended regular business activity and any lien enforcement action taken by the Company's floor plan lender and chief secured creditor, Ally Bank and Ally Financial Inc., to repossess vehicles from the Dealership; and

**WHEREAS**, Tim Ziss through his affiliate, Signature Lien Acquisitions III, LLC, became sole managing member of the Company pursuant to agreement dated April 8, 2020, and

**WHEREAS**, under agreement dated April 8, 2020, Signature Lien Acquisitions III, LLC, acting through Tim Ziss was conferred with all authority and discretion to take such actions necessary for the Company's restructuring;

**PLEASE TAKE NOTICE** that in view of all of the foregoing recitals, a special meeting of the Company shall be held telephonically by conference call on Monday, July 13, 2020 at 9:00 a.m. (prevailing Eastern Time) to adopt the following resolutions:

> **RESOLVED**, that the Company is authorized to file a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York; and it is further
>
> **RESOLVED**, that Tim Ziss, as the Company's Manager and Chief Restructuring Officer, was previously provided with full authority to pursue corporate restructuring including prosecuting a further Chapter 11 case; and it is further
>
> **RESOLVED**, that in furtherance of this authority, Tim Ziss, individually or through his affiliated company, has the requisite authority to perform, *inter alia* the following:

(a) Execute the Chapter 11 petition and all other accompanying documents, and cause same to be filed with the Bankruptcy Court on behalf of the Company;

(b) Cause to be filed all schedules, statements, motions, applications and other papers necessary to prosecute the Chapter 11 case on behalf of the Company including a plan of reorganization and disclosure statement;

(c) Negotiate a restructuring of all of the Company's debts and contractual obligation including the return of any residual vehicles to the company's floor plan lender, Ally Bank and Ally Financial Inc.; and it is further

**RESOLVED**, that the Company is authorized to retain the law firm of GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP, as bankruptcy counsel for the purpose of prosecuting the Chapter 11 case under a general retainer.

Dated: New York, NY
July 9, 2020

/s/ Tim Ziss

| COMFORT AUTO GROUP WORK FLOW CHART | | | | FIRST SIX MONTHS RAMP UP | | |
|---|---:|---:|---:|---:|---:|---:|
| NEW CAR SALES      | 0       | 0       | 0       | 30      | 30       | 40      |
| USED CAR SALES     | 0       | 15      | 15      | 15      | 15       | 15      |
| SERVICE            | $ 50,000 | $ 60,000 | $ 60,000 | $ 65,000 | $ 107,525 | $ 107,525 |
| PARTS              | $ 36,750 | $ 36,750 | $ 40,425 | $ 40,425 | $ 46,488  | $ 46,488  |
| SALES STAFF        | 0.00    | 4.00    | 4.00    | 4.00    | 4.00     | 4.00    |
| SERVICE & PARTS STAFF | 6.50 | 7.00    | 9.00    | 9.00    | 10.00    | 10.00   |
| ADMIN/OFFICE STAFF | 3.50    | 5.00    | 5.50    | 7.00    | 7.00     | 7.00    |
| TOTAL FTE          | 10.00   | 16.00   | 18.50   | 20.00   | 21.00    | 21.00   |

# PROFORMA COMFORT AUTO GROUP START UP BUDGET

| NEW VEHICLE DEPARTMENT | | | Month 1 |
|---|---|---|---|
| | PROJECTED UNIT SALES | | 0 |
| | PROJECTED AVERAGE GROSS PROFIT (Incl F&I) | | $ 2,000 |
| GROSS PROFIT | Composite | Dealer Election | $ - |
| Less: Selling Expense | 9.4% | 9% | - |
| Super. Comp. | 9.0% | 10% | - |
| Adv. Exp. | 9.7% | 10% | - |
| Coop credit/delivery allowance | | | |
| Flooring Exp. | 2.0% | 33% | - |
| Floorplan Allowance | | | - |
| Other Dept. Exp. | 6.0% | 5% | |
| **NET PROFIT** | | | 0 |

| USED VEHICLE DEPARTM | Average Used Vehicle Cost | | Month 1 |
|---|---|---|---|
| **PROJECTED UNIT SALES** | $22,000 | | 0 |
| | PROJECTED AVERAGE GROSS PROFIT (Incl F&I) | | $ 2,800 |
| GROSS PROFIT | Composite | Dealer Election | $ - |
| Less: Selling Exp. | 8.5% | 8.5% | - |
| Super. Comp. | 5.0% | 10.0% | - |
| Adv. Exp. | 9.0% | 15.0% | - |
| Flooring Exp. | 2.1% | 3.0% | - |
| Other Dept. Exp. | 5.0% | 8.0% | - |
| **NET PROFIT** | | | $ - |

| SERVICE DEPARTMENT | Gross Margin % | | Month 1 |
|---|---|---|---|
| **PROJECTED SALES** | 78.0% | | $ 50,000 |
| GROSS PROFIT | Composite | Dealer Election | $ 39,000 |
| Less: Selling Expense | 35.0% | 26% | 25,208 |
| Super. Comp. | 0.0% | 16% | 6,240 |
| Other Comp. | 0.0% | 10% | 3,900 |
| Other Dept. Exp. | 0.0% | 3% | 1,170 |
| **NET PROFIT** | | | $ 2,482 |

| PARTS DEPARTMENT | Gross Margin % | | | Month 1 | |
|---|---|---|---|---|---|
| PROJECTED SALES | 35.0% | | | $ 105,000 | |
| GROSS PROFIT | Composite | Dealer Election | | $ 36,750 | |
| Less: Selling Expense | 30.0% | 22% | | 5,833 | |
| Super. Comp. | 10.0% | 15% | | 5,513 | |
| Other Comp. | 0.0% | 10% | | 3,675 | |
| Other Dept. Exp. | 0.0% | 2% | | 735 | |
| **NET PROFIT** | | | | $ 20,994 | |
| | | | | | |
| **TOTAL DEPTARTMENTS NET PROFIT** | | | | $ 23,476 | |
| | | | | | |
| **OTHER SEMI-FIXED EXPENSES** | | | | $ 20,000 | |
| | | | | | |
| **ADMINISTRATIVE EXPENSES** | | | | **Month 1** | |
| Owner's Comp. | | | | $ - | |
| Clerical Comp. | | | | 17,042 | |
| Other Employee Expenses | | | 35% | 5,965 | |
| Other Admin. Comp. | | | | 3,033 | |
| **TOTAL ADMINISTRATIVE EXPENSES** | | | | $ 26,040 | |
| | | | | | |
| Base Rent SERVICE/PARTS (30 day abatement) | | | | $ - | |
| Base Rent Showroom | (90 day abatement) | | | | |
| Other Facility Expenses | | | | 5,000 | |
| Other Fixed Overhead Expenses | | | | 10,000 | |
| **TOTAL FIXED OVERHEAD EXPENSES** | | | | $ 15,000 | |
| | | | | | |
| **NET ADDITIONS/DEDUCTIONS *** | | | | | |
| | | | | | |
| **NET PROFIT/LOSS** | | | | $ (37,564) | |
| | | | | | |
| **CUMULATIVE PROFIT/LOSS** | | | | **$ (37,564)** | |
| *$1,200 new/$1,500 used | | | | | |
| **FTE** | | | | **10** | |